UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JILL KLEIN, deceased, by her
Personal Representative, BRENT KLEIN,

        Plaintiff,

v.

CATERPILLAR INC.,

        Defendant.
_____/

Case No. 1:21-cv-11748

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND DENYING DEFENDANT'S MOTION TO DISMISS**

This matter is before this Court upon Plaintiff Brent Klein's Motion to Amend the Complaint and Defendant Caterpillar, Inc.'s Motion to Dismiss. For the reasons explained hereafter, Plaintiff's Motion will be granted, and Defendant's Motion will be denied.

**I.**

This case involves Plaintiff's negligence and products-liability claims, arising from the November 3, 2018 death of Jill Klein ("Decedent") in Mackinac County, Michigan. Decedent was killed when a Caterpillar mining hauler crushed her parked truck in a rock quarry. Because this case is at the 12(b)(6) stage, very little is known about the underlying facts, including: the specific circumstance of the accident; the mining hauler's owner; and Plaintiff's relationship to Decedent.

**A.**

In 2015, nonparty Carmeuse Lime & Stone, Inc. paid Defendant $1,075,252.00 for a Caterpillar Certified Rebuild Upgrade (CCRU) of a Caterpillar 785B mining hauler.[1] ECF No. 17

---

[1] On November 22, 2021, Defendant filed a notice of nonparty fault regarding Carmeuse Lime & Stone, Inc. ECF No. 18. Addressing that notice is not necessary to resolve Defendant's Motion to Dismiss.

at PageID.39 (citing ECF No. 17-4 at PageID.53–58). Caterpillar performed the CCRU in accordance with its own "Special Instruction" manual. *Id.* at PageID.39–40 (citing ECF No. 17-5 at PageID.60–160).

On November 3, 2018, Decedent was working an overnight shift at Carmeuse's quarry in Cedarville, Michigan. *Id.* at PageID.39. One of Decedent's coworkers was driving a load of rock in the Caterpillar 785B mining hauler, *id.*, which weighs between 210,000 and 550,000 pounds depending on the load. While Decedent sat in the driver's seat of her Ford F150 truck, the Caterpillar hauler drove over her, crushing the truck and ending her life. *Id.*

**B.**

On July 29, 2021, on behalf of Decedent, Plaintiff filed a complaint against Defendant, alleging one count of negligent failure to repair and update and one count of breach of warranty to properly repair and maintain. ECF No. 1. Because the initial complaint did not "assert the grounds supporting . . . jurisdiction" or indicate Plaintiff's domicile, on August 5, 2021, District Judge Mark Goldsmith directed Plaintiff to "file an amended complaint curing the above-mentioned defects." ECF No. 3 at PageID.6–7. On August 12, 2021, Plaintiff filed his first amended complaint, alleging the same two counts. ECF No. 4.

On September 20, 2021, the parties stipulated to "transfer th[e] case to the Northern Division of the Eastern District of Michigan," because "Plaintiff resides in Montmorency County." ECF No. 8 at PageID.15. Before the case was transferred, the parties stipulated that Plaintiff would "file a Second Amended Complaint with a more definite allegation of claims against Defendant," ECF No. 11 at PageID.22, which Plaintiff filed on September 30, 2021, ECF No. 10.

On October 14, 2021, Defendant filed a Motion to Dismiss the Second Amended Complaint. ECF No. 12. On the same day, Judge Goldsmith granted the parties' stipulated motion

for a change of division assignment under 28 U.S.C. § 1404(b) and LR 83.10, and then the case was reassigned to the undersigned. ECF No. 13.

On November 18, 2021, Plaintiff filed a response to Defendant's Motion to Dismiss, to which Defendant replied on December 2, 2021. ECF Nos. 17; 19. Plaintiff's response included a third amended complaint as an exhibit. ECF No. 17-6.

On December 17, 2021, Plaintiff filed a motion to amend the complaint, requesting that this Court approve the filing of his previously attached third amended complaint. ECF No. 20.

## C.

Plaintiff's second amended complaint alleges a negligence claim and a products-liability claim against Defendant. ECF No. 10.

Defendant filed a Motion to Dismiss stating that Plaintiff's second amended complaint fails for two independent reasons: (1) "Plaintiffs' claims . . . are all based on a failure modify to or retrofit the earth hauler in some way," which is a duty not recognized under Michigan law; and (2) "Paragraph 8(i) of the Second Amended Complaint also purports to state a claim for 'otherwise breaching duties owed,'" which "does not meet the notice pleading standard of Rule 8(a) because it provides no notice at all to Caterpillar what duties it is alleged to have breached." ECF No. 12 at PageID.24. Defendant elaborates that "a manufacturer is under no duty to modify its product in accordance with the current state of the art safety features." *Id.* at PageID.28–29 (citing *Gregory v. Cincinnati Inc.*, 538 N.W.2d 325 (Mich. 1995)). "Thus," Defendant adds, "there is only one type of very narrow post-manufacture duty recognized in the state of Michigan: the duty to warn when the alleged defect existed at the point of manufacture, but for some reason was undiscoverable by both the manufacturer and the consumer at the time." *Id.* at PageID.29 (first citing *Gregory*, 538 N.W.2d at 331–32; and then citing *Ray v. Rheem Textile Sys.*, No. 225934, 2002 WL 433157, at

\*5 (Mich. Ct. App. Mar. 19, 2002) (per curiam) (unpublished)). By contrast, Defendant explains, "Plaintiffs merely allege that [Defendant] had a duty in repairing, modifying, and updating the earth hauler in a way to prevent injury and 'to observe all duties imposed by law.'" *Id.* (quoting ECF No. 10 at PageID.19). "Further," Defendant concludes, "Plaintiffs have not alleged that [Defendant] assumed a duty to make the repairs or modifications listed in Paragraph 8 of the Second Amended Complaint." *Id.* at PageID.30.

Plaintiff agrees with Defendant that there is no "affirmative duty to perform repairs" under Michigan law. ECF No. 17 at PageID.37. Even so, Plaintiff contends, because Defendant voluntarily repaired the mining hauler, "it had an ongoing duty of care to perform [t]hat work reasonably and safely." *Id.* at PageID.38.

Defendant first replies that, rather than Defendant, it was FABCO CAT, "an authorized, wholly independent dealer for [Defendant's] products," that performed the CCRU. ECF No. 19 at PageID.180. Defendant alleges that Plaintiff has therefore failed to state a claim, because "FABCO CAT was separately incorporated from [Defendant] and was not a parent, subsidiary, or sister corporation to [Defendant]," and because Defendant "did not perform or charge for the modification and repairs." *Id.* Second, Defendant replies that "the 2015 rebuild FABCO CAT performed did not include the safety features Plaintiff now alleges were missing." *Id.* at PageID.181. As Defendant adds, FABCO CAT performed a Certified Rebuild (CCR), not a "Certified Rebuild *Upgrade*" (CCRU). *Id.* (emphasis in original). Even so, Defendant explains, the instructions for neither the CCR nor the CCRU reference the "additional, modified, or enhanced safety features" that "Plaintiff claims should have been added to the haul truck in 2015 as part of the rebuild." *Id.* at PageID.182. For these reasons, Defendant concludes that it "undertook no duty to modify or repair and did not modify or repair the equipment at issue." *Id.*

Plaintiff's Third Amended Complaint adds Count III, which replaces Count I's allegation of a duty "to exercise due care and caution in the *repair, modification, and updating* of the earth hauler," with a duty "to exercise due care and caution in the *design, manufacture, and distribution* of the earth hauler." *Compare* ECF No. 10 at PageID.19 (emphasis added), *with* ECF No. 17-6 at PageID.174 (same), *and* ECF No. 20-1 at PageID.302 (same). In this way, Count III clarifies the products-liability claim, which this Court discerned from Count I of the second amended complaint. *See* ECF No. 17 at PageID.40 ("Plaintiff also plans to seek leave to file a Third Amended Complaint, which will identify which of those deficiencies could have and should have been corrected with available technology in 1998 . . . .").

As indicated in his response to Defendant's Motion to Dismiss, Plaintiff also requests leave to file his Third Amended Complaint. *See* ECF No. 20. Specifically, Plaintiff seeks leave "to more clearly reflect the pending issues." *Id.* at PageID.296. Plaintiff sought but did not receive Defendant's concurrence. *Id.* Plaintiff believes that this Court should grant leave because "justice so requires." *Id.* (citing FED. R. CIV. P. 15(a)(2)). Defendant has filed a timely response, ECF No. 21. *See* E.D. Mich. LR 7.1(e)(2).

## II.

### A.

A court "should freely give leave" to amend "when justice so requires." FED. R. CIV. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason . . . the leave sought should, as the rules require, be 'freely given.'"). Justice does not require leave to amend in the presence of "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, [or] futility of amendment." *Glob. Lift Corp. v. Hiwin Corp.*, No.

14-CV-12200, 2016 WL 5476238, at *3 (E.D. Mich. Sept. 29, 2016). To that end, the decision to grant or deny leave to amend is "left to the sound discretion of the trial judge." *Id.*; *see also Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) ("[T]he case law in this Circuit manifests liberality in allowing amendments to a complaint." (citation and internal quotation marks omitted)); *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (per curiam) ("[T]he thrust of Rule 15 is to reinforce the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982))).

There is no reason to deny Plaintiff leave to amend. First, Plaintiff did not delay in filing—discovery has not begun, and there is no scheduling order in place. Second, Plaintiff provided notice to Defendant—Plaintiff both attached and shared an intent to file the Third Amended Complaint in his timely response to Defendant's Motion to Dismiss. Third, Plaintiff did not file in bad faith—the record indicates that he waited to file until Defendant replied to his response. Fourth, though Plaintiff has already amended his complaint twice, the deficiencies addressed by his Third Amended Complaint were not raised until Defendant filed its Motion to Dismiss—Judge Goldsmith only ordered the first amended complaint to correct issues with Plaintiff's jurisdictional allegations, and the parties stipulated to the second amended complaint to address the sufficiency of Plaintiff's factual allegations. Fifth, any prejudice to Defendant is slight—Defendant has already briefed the Third Amended Complaint in its response to the Motion to Amend. *See generally* ECF No. 21.

Defendant, however, suggests that Plaintiff's effort will be futile.

A proposed amendment is futile "if the [claim, even with the] amendment[,] could not withstand a Rule 12(b)(6) motion to dismiss." *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quoting *Foman*, 371 U.S. at 182); *see also Parchman*, 896 F.3d at 737–38 (same); *Midkiff*

*v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) (denying leave to amend when the proposed amended pleading consisted of conclusory allegations without factual support).

Plaintiff's "proposed amendment does not change the nature of the case, but rather just clarifies the allegations that he had already made in his original complaint." *Green v. Mason*, 504 F. Supp. 3d 813, 826 (S.D. Ohio 2020). In this way, Count III's additional content "does not meaningfully impact the arguments that Defendant[] mount[s] in [its] respective motion[] to dismiss, or undercut the Court's ability to consider those arguments here." *Id.* Indeed, Defendant acknowledges that Count III's "allegations are almost verbatim of those in Count I with no substantive differences." ECF No. 21 at PageID.305. And, contrary to Defendant's assertion, the statute of limitations has not expired, as Plaintiff filed his complaint about two years and nine months after his claim accrued. *See* MICH. COMP. LAWS § 600.5805(12); *see also Farm Bureau Mut. v. Combustion Rsch. Corp.*, 662 N.W.2d 439, 445 (Mich. Ct. App. 2003) (statute of limitations is three years for products-liability claims not sounding in contract). For these reasons, Plaintiff's Motion to Amend will be granted.

**B.**

Separately, this Court must determine the impact of granting Plaintiff's Motion to Amend on this Court's ability to consider Defendant's pending Motion to Dismiss.

Generally, an "amended complaint supersedes the original complaint, thus making the motion to dismiss the original complaint moot." *Ky. Press Ass'n v. Kentucky*, 355 F. Supp. 2d 853, 857 (E.D. Ky. 2005) (citing *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) (holding that the amended complaint supersedes all previous complaints and becomes the operative pleading)); *see also Glass v. Kellogg Co.*, 252 F.R.D. 367, 368 (W.D. Mich. 2008) ("Because the original complaint has been superseded and nullified, there is no longer a live

dispute about the propriety or merit of the claims asserted therein; therefore, any motion to dismiss such claims is moot." (footnote omitted)).

On the other hand, "[i]f some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading." *Yates v. Applied Performance Techs.*, 205 F.R.D. 497, 499 (S.D. Ohio 2002) (citations omitted). That is particularly true if the amended complaint is "substantially identical to the original complaint." *Mandali v. Clark*, No. 2:13-cv-1210, 2014 WL 5089423 at *2 (S.D. Ohio Oct. 9, 2014) (citations omitted).

There is no reason to exalt form over substance and force Defendant to file a new motion to dismiss. The Third Amended Complaint is largely identical to the earlier complaints, merely providing more detail about one cause of action but not changing the thrust of the allegations. Therefore, this Court will address Defendant's Motion to Dismiss as applying to Plaintiff's Third Amended Complaint.

### III.

### A.

Under Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court construes the pleading in the nonmovant's favor and accepts the motion's factual allegations as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The movant need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face," but the court need not accept as true the complaint's legal conclusions. *Iqbal*, 556 U.S. at 679–79 (quotations and citation omitted).

Because jurisdiction is based on diversity under 28 U.S.C. § 1332, Michigan's substantive law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Jackson v. Ford Motor Co.*, 842 F.3d 902, 907 (6th Cir. 2016); *see Caswell v. Air Prod. & Chemicals, Inc.*, 59 F. Supp. 2d 684, 688–89 (E.D. Mich. 1999) (holding that Michigan's comparative-negligence statute applies to breach-of-warranty claims rooted in federal diversity jurisdiction); *In re Certified Questions from U.S. Ct. of Appeals for the Sixth Cir.*, 331 N.W.2d 456, 458–59 (Mich. 1982) (stating that for "a products liability action sounding in 'negligence, *breach of warranty*[,] and other misconduct," federal courts must apply "the substantive law of the State of Michigan").

**B.**

It is well-established that a prima facie case of negligence requires a plaintiff to prove duty, breach, causation, and damages. *Fultz v. Union-Com. Assocs.*, 683 N.W.2d 587, 590 (Mich. 2004) (first citing *Case v. Consumers Power Co.*, 615 N.W.2d 17, 20 (2000); and then citing *Riddle v. McLouth Steel Prods. Corp.*, 485 N.W.2d 676, 681 (Mich. 1992)).

Plaintiff has sufficiently pled breach, causation, and damages. He alleges that Defendant breached its duty by performing "careless and negligent acts." ECF No. 20-1 at PageID.300–01. He alleges that Decedent's bodily injuries, pain and suffering, and death were the "direct and proximate result of the aforesaid negligence and breach of duties." *Id.* at PageID.301. And he alleges that damages "amount in excess of Seventy-five Thousand ($75,000.00) Dollars." *Id.* The more difficult issue in this case is whether Plaintiff sufficiently pleaded duty.

Plaintiff claims that Defendant owed Decedent "duties imposed by law." ECF No. 17-6 at PageID.172, 174. But Plaintiff does not identify which laws impose the statutory duty Defendant allegedly violated. Therefore, to the extent Plaintiff alleges negligence per se, he does not state a claim.

Plaintiff also alleges that Defendant negligently repaired, modified, or updated the mining hauler in 2015. *Id.* at PageID.172. Defendant correctly contends that Michigan law does not recognize a "duty to repair." ECF No. 12 at PageID.24. But, as Plaintiff correctly retorts, "[i]f one voluntarily undertakes to perform an act, having no prior obligation to do so, a duty may arise to perform the act in a nonnegligent manner." *Leone v. BMI Refractory Servs., Inc.*, 893 F.3d 359, 363 (6th Cir. 2018) (quoting *Fultz*, 683 N.W.2d at 591). That is, "Michigan law incorporates the voluntary-assumption-of-duty doctrine," which provides that "if one 'having assumed to act, does so negligently,' then liability exists as to a third party for 'failure of the defendant to exercise care and skill in the performance itself.'" *Id.* (quoting *Loweke v. Ann Arbor Ceiling & Partition Co.*, 809 N.W.2d 553, 561 (Mich. 2011)). Plaintiff has pled that the CCRU was conducted voluntarily.

Defendant claims that it was not the entity that completed the CCRU on the mining hauler so, therefore, it did not owe a duty to Decedent. Indeed, as Defendant identifies, though Plaintiff alleges that Defendant Caterpillar performed the CCRU, "the purchase order and sales documents for the upgrade . . . clearly and unambiguously indicate another company, FABCO CAT, performed and charged for the rebuild." ECF No. 19 at PageID.180 (citing ECF No. 17-4). Defendant contends that it cannot be liable for any harm caused by the CCRU because "at the time of the rebuild[,] FABCO CAT was an authorized, wholly independent dealer for [Defendant's] products in Wisconsin and Michigan," FABCO CAT was "separately incorporated from

[Defendant,]" and FABCO CAT "was not a parent, subsidiary, or sister corporation to [Defendant]." *Id.*

Plaintiff alleges that Defendant owed Decedent a duty because its "officers, agents, servants, and employees" completed the CCRU. ECF No. 17-6 at PageID.172, 174. Indeed, under Michigan law, if "there is a disputed question of agency, any testimony, either direct or inferential, tending to establish agency creates a question of fact for the jury to determine." *Meretta v. Peach*, 491 N.W.2d 278, 279–80 (Mich. Ct. App. 1992) (citing *Jackson v. Goodman*, 244 N.W.2d 423, 425 (Mich. Ct. App. 1976)). Here, Defendant could be liable as FABCO CAT's principal if there was "a manifestation by [Defendant] that [FABCO CAT] may act on [its] account." *Id.* at 280 (citing 1 RESTATEMENT (SECOND) OF AGENCY § 15 (AM. L. INST. 1958)). The crux of the agency relationship is "whether [Defendant] ha[d] a right to control the actions of [FABCO CAT]." *Id.* (citing *Little v. Howard Johnson Co.*, 455 N.W.2d 390, 393 (Mich. Ct. App. 1990) (per curiam)).

Plaintiff has sufficiently alleged that FABCO CAT was Caterpillar's agent. It is undisputed that FABCO CAT was Defendant's exclusive dealer in Michigan's upper peninsula. *See* ECF Nos. 19 at PageID.180; 21-1 at PageID.320. And it is undisputed that FABCO CAT completed the "optional" maintenance on the mining hauler in strict compliance with one of Caterpillar's technical manuals. ECF Nos. 17 at PageID.39–40; 19 at PageID.181. *See generally* ECF Nos. 17-4; 17-5; 19-1. Although a question of fact remains as to which upgrade FABCO CAT completed (the CCRU or the CCR), Defendant's technical manuals establish strict guidelines for both.

The parties have not offered a Michigan case or statute that immunizes a vehicle manufacturer from liability for negligent vehicle maintenance completed by an authorized agent.[2]

---

[2] Although the parties have not addressed it, Michigan Compiled Laws § 600.2947(1) provides that "[a] manufacturer or seller is not liable in a product liability action for harm caused by an alteration of the product unless the alteration was reasonably foreseeable." MICH. COMP. LAWS §

By contrast, several courts have found that manufacturers might be liable if they rely on dealers to incorporate safety devices that are not properly installed. *See, e.g.*, *Caporale v. Raleigh Indus. of Am., Inc.*, 382 So. 2d 849, 850–51 (Fla. Dist. Ct. App. 1980) (per curiam) (first citing *Sabloff v. Yamaha Motor Co.*, 273 A.2d 606, 612 (N.J. Super. Ct. App. Div.), *aff'd*, 283 A.2d 321 (N.J. 1971); and then citing *Vandermark v. Ford Motor Co.*, 391 P.2d 168, 171 (Cal. 1964) (en banc)). Other courts have also extended liability to manufacturers without requiring a principal-agent relationship. *See, e.g.*, *Alvarez v. Felker Mfg.*, 41 Cal. Rptr. 514, 520 (Cal. Dist. Ct. App. 1964). Moreover, some courts have allowed manufacturers to be liable for their dealers' negligent inspections, corrections, or adjustments. *See, e.g.*, *Leon v. Caterpillar Indus.*, 69 F.3d 1326, 1338 (7th Cir. 1995); *Hull v. Eaton Corp.*, 825 F.2d 448, 457–58 (D.C. Cir. 1987) (per curiam); *Zwingman v. Kallhoff*, 507 N.W.2d 894, 897 (Neb. 1993); *Ely v. Gen. Motors Corp.*, 927 S.W.2d 774, 777–78 (Tex. App. 1996). *But see Luck v. Primus Auto. Fin. Servs., Inc.*, 763 So. 2d 243, 246–47 (Ala. 2000) (holding that manufacturer's requirement for dealers to use specific forms and to use such forms as instructed did not establish an agency relationship).

Because Plaintiff has sufficiently alleged that FABCO CAT voluntarily completed the allegedly negligent repair, modification, or update of the mining hauler that killed Decedent,

---

600.2947(1). Although not so limited by its terms, defendants generally invoke section 600.2947(1) as an immunity against products-liability claims stemming from third-party alterations. *See, e.g.*, *Sedgwick Ins. v. F.A.B.E. Custom Downstream Sys., Inc.*, 81 F. Supp. 3d 582 296 (E.D. Mich. 2015); *Torno v. 2SI, LLC.*, No. 03-74091, 2006 WL 1284924, at *3 (E.D. Mich. May 10, 2006). To determine whether the manufacturer is immune, the court must ask, "[W]as any harmful alteration, misuse, or risk foreseeable?" *Sentinel Ins. v. JPaul Jones, L.P.*, No. 1:20-CV-255, 2021 WL 2587585, at *4 (W.D. Mich. June 24, 2021). Here, the alterations were as foreseeable as death and taxes. Indeed, Defendant literally wrote the book on these alterations, which it "requires for an older machine to qualify for a particular new machine warranty and service program." ECF No. 19 at PageID.12.

Plaintiff's claim that Defendant negligently repaired, modified, or updated the mining hauler will survive Defendant's Motion to Dismiss.

### C.

In Michigan, products-liability claims are creatures of statute. *Avendt v. Covidien Inc.*, 262 F. Supp. 3d 493, 518 (E.D. Mich. 2107) (citing MICH. COMP. LAWS § 600.2946a, *et seq.*). To establish a prima facie case of products liability under Michigan law, Plaintiff must demonstrate both that Defendant "supplied a product that was defective and that the defect caused the injury." *Id.* (quoting *Auto Club Ins. Ass'n v. Gen. Motors Corp.*, 552 N.W.2d 523 (1996)). A product defect "can be established through a variety of theories, including: (1) negligent design of the product; (2) negligent manufacture of the product; (3) negligent failure to warn about some aspect of the product; (4) breach of express or implied warranty; or (5) misrepresentation or fraud." *Id.* (quoting *Eiben v. Gorilla Ladder Co.*, No. 11-cv-10298, 2013 WL 1721677, at *8 (E.D. Mich. Apr. 22, 2013) (citation omitted)).

Plaintiff must sufficiently plead only one theory to survive a motion to dismiss. *Klusty v. Taco Bell Corp.*, 909 F. Supp. 516, 520 (S.D. Ohio 1995) ("To survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6), 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'" (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988))); *see, e.g.*, *In re Nat'l Prescription Opiate Litig.*, 452 F. Supp. 3d 745, 770 (N.D. Ohio 2020).

Plaintiff has alleged negligent design. ECF No. 20-1 at PageID.301–03. In Michigan, the more traditional version of a negligent-design claim attempts to prove "whether the design chosen renders the product defective, i.e., whether a risk-utility analysis favored an available safer alternative." *Gregory v. Cincinnati Inc.*, 538 N.W.2d 325, 329 (Mich. 1995) (citing *Prentis v. Yale*

*Mfg.*, 365 N.W.2d 176, 183–84 (Mich. 1984)). The focus of the defendant's duty in a negligent-design claim is whether the product was defective when it left the manufacturer's control. *Id.* (citing *Holloway v. Gen. Motors Corp. Chevrolet Div.*, 271 N.W.2d 777, 780 (Mich. 1978)).

Viewing the Third Amended Complaint in the light most favorable to Plaintiff, he has plausibly alleged an alternative design. Against Defendant, Plaintiff alleges four design failures. Specifically, Plaintiff alleges (1) "failure to design a full front bumper over Defendant's huge tires and wheels"; (2) "failure to include obstacle detection devices to mitigate the formidable hazard of Defendant's earth hauler"; (3) "failure to augment the visibility of the cab which provided only partial visibility of surroundings"; and (4) "failure to add audible warnings regarding the movement of the earth hauler." ECF No. 20-1 at PageID.300–03.

Because it can be inferred from Plaintiff's Third Amended Complaint that a safer, feasible alternative design exists—namely, a mining hauler equipped with a full front bumper, obstacle detection devices, a more visible cab, and audible movement warnings—and that such an alternative design would have prevented the Decedent's death, Defendant's Motion to Dismiss will be denied as to Plaintiff's claim for products liability.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff's Motion to Amend, ECF No. 20, is **GRANTED**.

Further, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 12, is **DENIED**.

Dated: January 12, 2022                         s/Thomas L. Ludington
                                                THOMAS L. LUDINGTON
                                                United States District Judge