UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JILL KLEIN, deceased,
by her personal representative
BRENT KLEIN,

   CASE NO. 21-CV-11748

 *Plaintiffs*,

   DISTRICT JUDGE THOMAS L. LUDINGTON
v.   MAGISTRATE JUDGE PATRICIA T. MORRIS

CATERPILLAR, INC.,

 *Defendant*.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 65)**

## I. RECOMMENDATION

For the following reasons, **I RECOMMEND** that this Court **GRANT** Defendant's motion for summary judgment (ECF No. 65).

## II. REPORT

### A. Background

Plaintiff filed the governing Third Amended Complaint in this case on April 22, 2022. (ECF No. 30.) Plaintiff alleges that on November 3, 2018, the decedent, Jill Klein, sustained serious injuries causing her death when the subject 785B earth hauler ran over her Ford F-150 pickup truck which was parked in a rock quarry

1

owned by Carmeuse Lime & Stone,, Inc. Plaintiff avers that the relevant earth hauler was inherently dangerous and not updated with safety features when rebuilt in late 2015. (ECF No. 30, PageID.361-362. Plaintiff alleges three counts in the third amended complaint: (1) negligent failure to modify the front bumper and electronic obstacle detection devices and visibility feature in 2015 (negligence); (2) breach of implied or express warranty that the earth hauler was modified, repaired and updated so as to be reasonably fit for its intended and foreseeable use (strict liability/negligence *per se)*; and (3) negligence in the design and manufacture of the earth hauler in 1994 (product liability). (ECF No. 30.) The Court considered Defendant's motion to dismiss as applying to Plaintiff's Third Amended Complaint when it simultaneously granted a motion to file a third amended complaint. (ECF No. 24, PageID.330.) The Court dismissed the negligence *per se* claim; thus, Plaintiff's remaining claims are Counts 1 (negligence) and 3 (product liability). (*Id*.)

The subject earth hauler is a Caterpillar 785B originally manufactured on January 10, 1994, which was sold by Defendant on April 4, 1994 to Michigan Tractor & Machinery Company. In 2015, the subject hauler underwent a rebuild by FABCO CAT. (ECF No. 67, PageID.989-990.) FABCO CAT is an authorized, independent dealer for Caterpillar products in Wisconsin and Northern Michigan

2

and is not a parent, subsidiary or sister corporation to Defendant Caterpillar. (ECF No. 67, PageID.989.)

Carmeuse Lime & Stone, Inc., paid $1,075,252.00 for a Caterpillar Certified Rebuild Upgrade (CCRU) of the subject hauler. (ECF No. 17, PageID.39.) The rebuild was performed by FABCO CAT and the parties dispute whether FABCO CAT was acting as an agent of Defendant Caterpillar at the time of the 2015 rebuild.

Allen Check, an employee of FABCO, prepared the FABCO rebuild estimate/quote for its customer non-party Carmeuse. The goal in rebuilding the subject hauler was to either replace or refurbish certain parts of the hauler toward the ultimate goal of making it like a new 1994 model 785B hauler. (ECF No. 67, PageID.993.) Although the rebuild was intended to "'include[] all current Caterpillar Engineering Updates applicable to this truck'" that referred only to parts that were included in the 1994 model 785B which had improved in quality or reliability. (ECF No. 67, PageID.994.) "It does not refer to FABCO adding equipment or to redesigning a 1994 Caterpillar 785B" because such a redesign could affect the truck's eligibility for warranties or extended protection programs that customers, like Carmeuse, desire. (ECF No. 67, PageID.993-994.) Defendant states that "Carmeuse could have added cameras and object detection to the rebuilt 785B, but it did not request those options. Had Carmeuse wanted to discuss the

3

addition of cameras, object detection, or bumper or cab changes, it would have been separate and apart from its request for the certified rebuild [CCR] [and] FABCO has no record of such a discussion with Carmeuse on this rebuild and no such discussion occurred to Allen Check's knowledge." (ECF No. 67, PageID.995.) However, "Engineer Craig Demry will opine that the electronics and data communications systems on the 785B, due to its age, are not as sophisticated as machines build after the introduction of Cat Detect [the object detection system] [and] [t]here is no evidence this system could have been installed on the 785B." (ECF No. 67, PageID.998.)

B.     **Summary Judgment Standard**

A court will grant a party's motion for summary judgment when the movant shows that "no genuine dispute as to any material fact" exists. Fed. R. Civ. P. 56(a). In reviewing the motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary

4

judgment is also proper when the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot merely rest on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not . . . 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D.N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not

sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

C.   **Analysis**

1. **Duty to modify the subject hauler**

Defendant contends that no genuine issue of material fact exists as to whether Defendant (or FABCO CAT) assumed a duty to modify the subject 785B hauler to bring it up to current standards or otherwise address any complaints Plaintiff now makes. (ECF No. 65, PageID.967.) Defendant and Plaintiff both extensively discuss the opinion in *Gregory v. Cincinnati, Inc.*, 450 Mich. 1, 538 N.W.2d 325 (1995) but differ as to its application. (ECF No. 65, PageID.967; ECF No. 75, PageID.1754.) As explained in *Gregory*:

> Commentators and courts have found postmanufacture or continuing duties to arise in a variety of circumstances depending on the type of danger posed, the manufacturer's knowledge, and the time in which the manufacturer knew, should have known, or actually learned of a possible problem. Generally, however, these factors must exist while the product is in the control of the manufacturer. For example, a danger must exist at the point of manufacture and the manufacturer either must have known or should have known of the problem while still in its control. This is most appropriately deemed a postmanufacture duty stemming from a defect at the point of manufacture.
>
> Over the years, however, these postmanufacture duties have been extended beyond the underlying premise of a point-of-manufacture defect to situations in which the product was not legally defective at the time of release, but 'defective' because of improvements in technology,

>imposing on the manufacturer a duty to notify purchasers or incorporate the improvements into products already on the market.

*Gregory*, 450 Mich. at 14-15. The Court then noted that both theories were presented in the case. *Id*. at 15. The Court held that "it is unnecessary and unwise to impose or introduce an additional duty to retrofit or recall a product." *Id*. at 25. The Court also found lacking any evidence of a "necessary assumption or controlling relationship" between the manufacturer and the plaintiff's employer "even if we recognized this theory of liability." *Id*. Thus, the Michigan court did not recognize any theory that would impose a postmanufacture duty to retrofit or recall a product that was not defective at the time of manufacture.

The Court did go on to explain how other jurisdictions that do recognize such a theory have determined what it takes to show a "necessary or controlling relationship" *Id*. at 25-26, but such elaboration was done to simply highlight its alternative finding that even if the theory was recognized, the plaintiff in *Gregory* case could not meet its requirements. To the extent that Plaintiff reads this dicta as somehow showing that the court did indeed recognize a duty to retrofit a product, I suggest that such a reading is in error. I therefore read *Gregory* as establishing that there is no postmanufacture duty to retrofit or recall a product that was not defective when manufactured under Michigan law. See, *Citizens Ins. Co. of Michigan v. Sears Roebuck & Co.*, 203 F. Supp. 2d 837, 846 (W.D. Mich. 2002)("Michigan courts have refused to impose a postmanufacture duty to retrofit a product" and the "'the time of

7

manufacture is the relevant point for determining the state of existing technology.'");

*Christ v. Sears, Roebuck & Co.*, 149 F.3d 1182, *3 (6th Cir. 1998)(applying Michigan law to determine what was relevant in a product liability case, noting that the inquiry in a design defect case regards only the time of manufacture, and concluding that only evidence of the state of the art technology before or at the time of manufacture was relevant).

As noted early by this Court, even if there was no duty to retrofit or recall the hauler, Defendant might have assumed a duty to act in a nonnegligent manner if FABCO CAT's actions in completing the rebuild can be attributed to Defendant. *Klein v. Caterpillar, Inc.* 581 F. Supp. 3d 912, 920-921 (E.D. Mich. 2022). Therefore, the next logical question is whether FABCO CAT's actions may be attributed to Defendant via any agency relationship between FABCO Cat and Defendant.

### 2. Agency

"Under fundamental agency law, a principal is bound by an agent's actions within the agent's actual or apparent authority." *James v. Alberts*, 464 Mich. 12; 626 N.W.2d 158 (2001). Thus, in order for Plaintiff to hold Defendant liable for any negligence in the rebuild performed by FABCO CAT, Plaintiff must show that FABCO CAT was acting as Defendant's agent.

8

Defendant argues that no genuine issue of material fact exists as to whether FABCO CAT was acting as Defendant Caterpillar's agent when performing the 2015 rebuild of the subject 785B hauler. (ECF No. 65, PageID.963.) Defendant states that FABCO CAT is an authorized but wholly independent dealer for its products in Wisconsin and Michigan and that FABCO CAT is separately incorporated and is not a parent, subsidiary or sister corporation of the Defendant. (*Id*. at 965.) Defendant cites to the affidavit of Mr. Check (representative of Carmeuse, Plaintiff's employer) and Falcione (representative of Defendant) to show that the certified rebuild was a transaction between Carmeuse and FABCO CAT only and that Defendant "merely provided instructions as to scope and parameters of the rebuild." (ECF No. 65, PageID.965, Exs. F, G, and H.) Defendant further offers that Carmeuse never indicated it believed FABCO CAT was an agent of Caterpillar, FABCO Cat employees performed all the work "with no Caterpillar employees directly involved or consulted or Caterpillar telling FABCO what to do when it rebuilt the subject 785B." (ECF No. 65, PageID.965-966, Ex. H.)

Plaintiff responds that "by choosing the elements of the certified rebuild, authorizing its parameters, FABCO using Caterpillar's language and logo, [Defendant] Caterpillar Inc. controlled FABCO in this rebuild" and that "there is a a genuine issue of material fact regarding whether an agency relationship existed." (ECF No. 75, PageID.1754.) Plaintiff also cites to the deposition of Mr. Check who

9

confirmed that the FABCO CAT rebuild "was done pursuant to the certified rebuild parameters authored by Caterpillar Inc." and who stated that when the agreement referred to the rebuild including all "current Caterpillar engineering updates applicable" such information "would be from Caterpillar." (ECF No. 75, PageID.1751-1753.) Plaintiff also points out that the Caterpillar logo can be seen on the work estimate agreement between FABCO CAT and Carmeuse. (ECF No. 75, PageID.1753, Ex. F.)

Michigan law provides that an "agency relationship may arise when there is a manifestation by the principal that the agent may act on his account." *Meretta v. Peach*, 195 Mich. App. 695, 697, 491 N.W.2d 278 (1992). "The test of whether an agency has been created is whether the principal has a right to control the actions of the agent." *Id*. "The characteristic of the agent is that he is a business representative. His function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between the principal and third persons." *Saums v. Parfet*, 270 Mich. 165, 172, 258 N.W. 235 (1935), quoted with approval in *St. Clair Intermediate School Dist. v. Intermediate Ed. Ass'n/Michigan Ed. Ass'n*, 458 Mich. 540, 558, 581 N.W.2d 707 (1998).

"An independent contractor is one who, carrying out an independent business, contracts to do certain work according to his own methods and without being subject to the control of his employer as to the methods and means of accomplishing the

10

work but only as to the results to be accomplished by the work." *Aero Taxi-Rockford v. General Motors Corp.*, 2006 WL 1479915, at *5 (Mich. Ct. App. May 30, 2006). The factors to be considered include "the independent nature of the business, the existence of a contract for the performance of a specific piece of work, the agreement to pay a fixed price for the work, the employment of assistants who are under the control of the alleged independent contractor, the furnishing by one of the necessary materials, and the right to control the work while it is in progress except as to the results." *Id*. As to the last factor, stated another way, "the power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." Restatement (Third) of Agency § 1.01 cmt f(1). "[S]etting standards in an agreement for acceptable service quality does not itself create a right of control." *Id*. § 1.01(f)(1).

In *Little v. Howard Johnson Co.*, 183 Mich. App. 675, 682; 455 N.W.2d 390 (1990)(granting summary judgment), the governing franchise agreement "insured the uniformity and standardizations of products and services offered by a Howard Johnson restaurant" but, as the court noted, "[t]hese obligations do not affect the control of daily operations." The court added that "while defendant retained the right to regulate such matters as building construction, furnishings and equipment, and advertising, it retained no power to control the restaurant's day-to-day operations." *Id.* Defendant "had no control over hiring and firing or supervision of employees"

11

and had "no control over the daily maintenance of the premises other than to obligate the franchise to maintain such in a 'clean' and 'orderly' condition." *Id*.

Similarly, in the instant case, Defendant "provided instructions as to scope and parameters of the rebuild." (ECF No. 65, PageID.965, Exs. F, G, and H.), such that the FABCO CAT rebuild "was done pursuant to the certified rebuild parameters authored by Caterpillar Inc." and utilizing all "current Caterpillar engineering updates applicable" with information that "would be from Caterpillar." (ECF No. 75, PageID.1751-1753.) However, "FABCO employees did all the work on the Certified Rebuild with no Caterpillar employees directly involved or consulted or Caterpillar telling FABCO what to do when it rebuilt the subject 785B." (ECF No. 65, PageID.965-966, Ex. H.) Thus, Defendant set the "results to be accomplished by the work" but did not interfere with FABCO CAT's "methods and means of accomplishing the work." *Aero Taxi-Rockford, supra*, at *5. In addition, there was a contract governing the rebuild, there is no evidence that Defendant supplied any materials necessary to accomplish the work done by FABCO CAT, and there is no evidence that Defendant had the right to control the work while it was in process other than the results. The fact that Defendant set the standards for the end result "does not itself create a right of control." *Aero-Taxi, supra*, at *5. I therefore suggest that taking all of the evidence and viewing it in the light most favorable to the Plaintiff, there is no genuine issue of material fact as to the conclusion that FABCO

CAT was not in an agency relationship with Defendant. I further suggest this conclusion is not undermined by the presence of the Caterpillar logo on the work estimate agreement between FABCO CAT and Carmeuse. (ECF No. 75, PageID.1753, Ex. F.) I suggest this merely shows that FABCO CAT was an authorized dealer for Defendant's products.

Since Plaintiff cannot establish an agency relationship, I suggest that Defendant cannot be made vicariously liable for FABCO CAT's actions and Defendant is entitled to summary judgment. I therefore need not reach the other issues raised regarding causation[1] and the statute of limitations.[2]

### D.  Conclusion

For these reasons, **I RECOMMEND** that this Court **GRANT** Defendants' motion for summary judgment (ECF No. 56) and dismiss the amended complaint (ECF No. 32).

---

[1] Defendant argues that there is no genuine issue of material fact as to whether the 785B was in any way defective or that any alleged defect caused or contributed to cause the event at issue. (ECF No. 67, PageID.974.)

[2] Defendant contends that to the extent that Plaintiff asserts a claim for a defect based on the original 785B as manufactured in 1994 (Count III), such claim is barred by the applicable three year statute of limitations. (ECF No. 67, PageID.979.) Plaintiff counters that this claim relates back and thus, is not barred. (ECF No. 75, PageID.1765.)

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address

each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  July 10, 2023                                        s/ PATRICIA T. MORRIS
                                                            Patricia T. Morris
                                                            United States Magistrate Judge